[No. 6571.]

## FOSTER, ET AL. V. HART CONSOLIDATED MINING CO.

1. COUNTY COURT—*Jurisdiction—Amount Involved*—In proceedings under Rev. Stat. secs. 5639, 5640, to recover a tax illegally imposed, the jurisdiction of the county court is determined by the amount demanded, and not by the value of the property alleged to have been improperly assessed—(434).

2. STATUTES—*Construed*—A statute (Rev. Stat. sec. 5625) provided that the assessor, in fixing the value of non-producing mining properties, should take into consideration their location, proximity to other mines, and other matters which might assist in arriving at a fair and equitable valuation, but that nothing in the act should confer upon the assessor the right to assess "a non-producing claim at a greater sum per acre than is assessed per acre, against the lowest producing mine in the same locality." *Held*, that the word "locality" in the latter phrase was not to be construed as synonymous with mining district—434, 435).

*Error to Teller County Court*—HON. THORNTON H. THOMAS, Judge.

Mr. E. J. BOUGHTON, Messrs. THOMAS, BRYANT, NYE & MALBURN, for plaintiffs in error.

Mr. HILDRETH FROST, Messrs. VAILE, McALLISTER & VAILE, for defendant in error.

The Hart group of mining properties, non-producers, belonging to defendant in error, was assessed at the rate of $540.00 per acre for the year 1907, which was a higher valuation than that placed upon producing mines in the same locality for that year. To correct this alleged error, the defendant in error petitioned the assessor to reduce the valuation to $80.00 per acre, which would have made the total assessment amount to a little over $2400.00. This petition was denied. The defendant in error then paid the taxes levied against the group, on the valuation fixed by the assessor, and appealed from the action of the assessor in denying its petition to the county court. These proceedings were had under sections 5639 and 5640, Revised Statutes 1908, which, so far as material, are as follows:

"If, in the opinion of any taxpayer, his property * * * has been assessed too high, or * * * illegally assessed, such person having such grievance may appear before the assessor and make known to the assessor the facts in the premises, and if, in any particular, the assessment complained of is erroneous under the statutes, the assessor shall correct the same * * *."

"In all cases where the amount of the total assessed valuation assessed against such taxpayer exceeds the sum of $7,500. Every objection and statement of grievance pursuant to the foregoing section shall be in writing, stating the particular ground of such objection, or the particular facts wherein such grievance consists, and if such objections be overruled by the assessor, in whole

or in part, he shall state briefly in writing the grounds
of his refusal, and the taxpayer complaining may appeal
from his decision to the district or county court of the
county wherein the property is assessed, on or before the
first Monday in January following said assessment. Such
appeal shall be perfected in the same manner as now pro-
vided by law for appeal from boards of county commis-
sioners upon the disallowance of a claim against the
county; but before the appeal shall be allowed, the peti-
tioner shall pay to the county treasurer the amount of
the tax levied pursuant to said assessment, and in case
the appellant shall succeed in the county or district court,
in whole or in part, the treasurer shall refund such tax
according to the judgment of such court, and in all cases
where any tax so collected shall be refunded, the taxpayer
shall be entitled to receive interest on the amount re-
funded at ten per cent. per annum from the time of pay-
ment thereof; provided, however, that the said court shall
not review or give relief against an assessment unless it
shall appear manifestly excessive, fraudulent, or oppres-
sive.   Both the assessor and the said county or district
court, in considering such statement of grievance by any
such taxpayer shall take into consideration the value as
fixed by the assessor upon other similar assessable prop-
erty similarly situated."

In the county court it appears from the pleadings of
the respective parties and stipulations, that the assessed
valuation of the property of defendant in error as made
by the assessor was the sum of $16,330; that defendant in
error claimed it should be modified and reduced from
that sum to the sum of about $2500.; that upon the valua-
tion returned by the assessor defendant in error paid taxes
under protest in the sum of $555.22, but claimed that the

amount of such tax on a fair valuation of the property would not exceed about the sum of $93.00.

Plaintiffs in error moved to dismiss the proceeding for want of jurisdiction, on the ground that it appeared from the pleadings on behalf of defendant in error that the value of the property involved exceeded the sum of two thousand dollars. This motion was based upon article VI, section 23, of the constitution, which is as follows: "County courts shall be courts of record, and shall have original jurisdiction in all matters of probate * * * and such other civil and criminal jurisdiction as may be conferred by law, provided such courts shall not have jurisdiction in any case where the debt, damage or claim or value of property involved shall exceed two thousand dollars, except in cases relating to the estates of deceased persons." The motion was denied.

From the pleadings, stipulation of the parties, and testimony, the court determined that the Hart group should be assessed at the rate of $118.31 per acre. This was the valuation of adjoining, producing properties, known as the Damon group, and resulted in the court fixing the asssessed valuation of the Hart group at the sum of $3578.52. Upon this valuation the court determined that the taxes levied should not have exceeded the sum of $121.67; that the difference between this amount and the sum paid on the valuation returned by the assessor amounted to $433.35, which sum, together with interest at the rate of ten per cent. per annum from the date of payment to the treasurer, the latter was directed to return to the defendant in error. The defendants have brought the case here for review on error, and have assigned as errors (1) the unconstitutionality of the revenue act relating to the assessment of mining claims;

and (2) that the court erred in overruling the motion to dismiss for want of jurisdiction.

The plaintiff below requested the court to find that the Cripple Creek mining district consisted of six or seven square miles, and was to be considered as a single locality; that the valuation upon the Hart group should be reduced to the valuation of the Jennie sample group; producing properties in an adjoining section to that in which the Hart group is located, but assessed at a lower rate per acre than the Damon group, and that the valuation of the Hart group, by comparison with the Jennie sample group, should have been fixed at the sum of eighty dollars per acre, which findings the court refused to make.

Section 5625, Rev. Stats. 1908 provides, in substance, that non-producing mines and mining claims shall be assessed and taxed like other property, according to the value thereof; and that in ascertaining such value, the assessor shall, in addition to the other requirements of the revenue act, take into consideration the location of such mines, their proximity to other mines or mining claims, and other matters which may tend to assist him in arriving at a fair and equitable valuation of such non-producing property, but that nothing in the act shall be construed as giving the assessor any right to assess non-producing mining claims at a greater sum per acre than is assessed per acre against the lowest producing mine situated in the same locality.

Based on this provision and the refusal of the court to make the findings above referred to, the defendant in error has assigned cross-errors, all of which relate to the meaning of the word "locality," mentioned in the section of the statute above noted. The several errors assigned by the respective parties will be considered in their order.

Mr. JUSTICE GABBERT delivered the opinion of the court.

In the preceding case of *Foster v. The Hart Consolidated Mining Company,* we have determined that the portions of the revenue act involved in the case at bar are constitutional, and it is, therefore, unnecessary to rediscuss that question here.

The motion to dismiss was properly denied. The jurisdiction of the county court was measured by the ultimate relief which plaintiff below demanded. This was the return of the excess tax which it claimed to have paid. It was less than the sum of two thousand dollars. In other words, the "debt, damage, or claim or value of property involved," the amount or value of which marks the jurisdiction of the county court, as prescribed by the constitution, is, in the case at bar, the amount of the tax which the plaintiff claimed should be refunded, and not the value of the property upon which this tax was assessed.—*Linehan Ry. Transfer Co. v. Pendergrass,* 70 Fed. Rep. 1.

In support of the cross-errors assigned, counsel for defendant in error contend:

"(1) That the term "locality," as used in the last provision of section 81-H, (section 5625 R. S.) means "mining district."

(2) That the county court erred in refusing to so interpret and apply the law in this cause.

(3) That the defendant in error should not have been assessed at a higher rate per acre than the proportionate rate of assessment per acre borne by the lowest producing mine in the Cripple Creek mining district during the year 1907."

The term "locality" has a variable meaning, according to the circumstances which are necessary to consider in determining its meaning. Perhaps no rule can well be formulated which would serve as a guide to assessors in every case. The statute requires that in fixing the value of non-producing mines, they shall take into consideration their location, proximity to other mines, and any other matters which may tend to assist them in arriving at a fair and equitable valuation of this class of property. This clearly indicates that it was not the intention of the legislature to make the term "locality" synonymous with "mining district." Another reason is that had it been the intention of the legislature that the lowest producing mine in the same locality meant the lowest producing mine in a district, the act would have so declared, in express terms. There might be instances when, from the facts, the lowest producing mine in a particular district would be the one meant by the proviso of section 5625, R. S., but this would depend upon the particular facts pertinent to consider in such a case. The meaning of "locality" for which the defendant in error contends would be inflexible, and clearly was not intended to mean "mining district." Otherwise, the elements named which are to guide the assessor in valuing non-producing mining property would not have been specified with the particularity they are. The cross-errors are overruled, and the judgment of the county court is affirmed.

*Judgment affirmed.*

Decision *en banc.*

Chief Justice Campbell and Mr. Justice Musser not participating.